# Exhibit "C"

## PIPER AIRCRAFT CORPORATION

### Irrevocable Trust Agreement

THIS AGREEMENT is made this 17ʰ day of July, 1995, by and among PIPER AIRCRAFT CORPORATION, a Pennsylvania corporation and a Debtor and Debtor in Possession, as settlor, THE NEW PIPER AIRCRAFT, INC., a Delaware corporation, and its successors and assigns ("NEWCO"), and HOWARD J. BERLIN, Esquire (including any person as shall be serving as trustee hereunder at such time in his, her, or its capacity as trustee), as trustee (the "Trustee").

### RECITALS

Reference is made to Article I of this Agreement for the definition of certain terms used herein without definition. On July 1, 1991 (the "Petition Date"), Old Piper filed a petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. Section 101 et seq. (the "Code") (Case Number 91-31884-BKC-RAM), in the United States Bankruptcy Court for the Southern District of Florida (the "Court"). On May 19, 1995, the Debtor, the Official Committee of Unsecured Creditors of Piper Aircraft Corporation (the "Committee"), NEWCO, Teledyne Industries, Inc., and Dimeling, Schreiber and Park filed with the Court their First Amended Joint Chapter 11 Plan of Reorganization (as it may be amended, supplemented, or otherwise modified from time to time in accordance with the provisions thereof and the Code; the "Plan"). This Agreement is executed in order to facilitate implementation of the Plan. The corpus of the Trust and all income earned thereon remaining after the satisfaction of all Trust Expenses, Loss Adjustment Expenses and liabilities shall be used solely for the purpose of novating and discharging certain of the legal obligations of the Debtor and NEWCO pursuant to the Plan. Under the Plan, the Initial Trust Assets will be received by the Trust on behalf of and for the benefit of holders of Liability Claims, Future Claims and Interests, so that: (i) the Trust Assets can be distributed to or disposed of for the benefit of the Trust Beneficiaries in an orderly manner; (ii) objections to Asserted Liability Claims and Future Claims can be pursued and Disputed Claims and Future Claims can be resolved; (iii) claims, including those based upon Sections 542, 543, 544, 547, 548, 549, 550 and 553 of the Code, may be prosecuted; (iv) Distributions may be made to certain holders of Administrative Tort Claims, if any, in Article III, Allowed Liability Claims in Classes 8, 9, 10, 11 and 12 in Article IV, Interests in Class 13 and Resolved Future Claims in Article V of the Plan (as their respective interests may appear in accordance with the Plan); and (v) certain Indemnification and Contribution Rights will be transferred and assigned to the Trust.

It is intended that the Trust created pursuant to this Agreement constitute and be treated for tax purposes as a "qualified settlement fund" under Section 468(B) of the Internal Revenue Code of 1986, as amended (the "Internal Revenue Code"), and the regulations thereunder.

### DECLARATION OF TRUST

NOW, THEREFORE, in order to declare the terms and conditions hereof, and in consideration of the premises, and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and subject to the terms and conditions of the Plan and this Agreement, the Debtor has executed this Agreement and absolutely and irrevocably assigns to the Trustee hereby, and to his successors and assigns, all right, title and interest of the Debtor in and to the Trust Assets;

TO HAVE AND TO HOLD unto the Trustee and his successors in trust;

IN TRUST NEVERTHELESS, under and subject to the terms and conditions set forth herein and for the benefit of the holders of Allowed Liability Claims, Resolved Future Claims, and Interests as set forth in Article III, in Classes 8, 9, 10, 11 12, and 13 of Article IV, and in Article V of the Plan (as their respective interests may appear in accordance with the Plan and the terms hereof), and for the purpose of funding the payment of Trust Expenses, and Loss Adjustment Expenses and for the performance of and compliance with the terms hereof and of the Plan;

PROVIDED, HOWEVER, that upon termination of the Trust in accordance with Article X hereof, this Agreement shall cease, terminate and be of no further force and effect.

IT IS HEREBY FURTHER COVENANTED AND DECLARED, that the Trust Assets are to be held and applied by the Trustee solely for the benefit of the Trust Beneficiaries and for no other party, subject to the further covenants, conditions and terms hereinafter set forth.

## ARTICLE I

## DEFINITIONS

1.1     *Defined Terms.* (a) Capitalized terms used but not defined herein, shall have the meanings ascribed to them in the Code or the Plan, as the case may be.

(b)     As used in this Agreement, the following terms shall have the respective meanings specified below:

"Administrative Tort Claim" means that portion of a Product Liability Claim which the Court has determined to be entitled to treatment as an Administrative Expense Claim, if any.

"After Notice and a Hearing" shall have the meaning ascribed to "after notice and a hearing" in Section 102(1) of the Code as of the date of this Agreement; provided that any relief requested by the Trustee after notice may be granted without a hearing unless an objection to such relief is actually received by the Trustee and filed with the Court not less than five (5) days prior to the hearing date specified in the notice of request thereof; and provided further that, unless otherwise provided herein or in the Plan, notice for such purpose shall be considered adequate if given in writing to Persons Entitled to Notice not less than twenty (20) days prior to the proposed date of hearing or, if applicable, the proposed date of submission specified in such notice.

"Agreement" means this Piper Aircraft Corporation Irrevocable Trust Agreement, as amended from time to time from and after the date hereof.

"Allowed Liability Claim" means an Asserted Liability Claim which has been allowed pursuant to the Plan or pursuant to Article IV hereof.

"Applicable Percentage" means the percentage of each Resolved Future Claim which the Trustee will use his best efforts to pay to each holder of a Resolved Future Claim. The Applicable Percentage will be equal to the lesser of (i) 100%, or (ii) the percentage that results from dividing the aggregate Distributions made by the Trustee in respect of Allowed Claims in Class 10 and 11, through and including the Third Distribution Date, by the aggregate Allowed amount of such Claims.

"Asserted Liability Claim" means a Present Claim asserted against the Debtor, the Trust, or any of their respective assets in accordance with the Plan and this Agreement, including asserted Product Liability Claims, unless and until such Liability Claim becomes an Allowed Liability Claim.

"Cash" means immediately available U.S. funds, and short term (90 days or less), AAA rated debt instruments.

"Claimant" means any Entity holding or asserting an Asserted Liability Claim or Future Claim.

"Creditor Board" means a group of not less than three nor more than seven persons who shall provide advice to the Trustee with respect to certain events and issues affecting the interests of the Trust, the Trust Beneficiaries and the Trustee.

"Disposition" means any sale, conveyance, transfer, assignment, liquidation, distribution, or abandonment of Trust Assets (other than Cash) by the Trustee.

"Distributable Assets" means the Trust Assets available for distribution to the holders of Allowed Liability Claims, Resolved Future Claims and Interests, after payment, or provision for payment, of the Trust Expenses and other liabilities of the Trust, as provided herein and in the Plan.

"District Court" means the United States District Court for the Southern District of Florida or any other United States District Court which has jurisdiction to determine Asserted Liability Claims and Future Claims.

"Effective Date" shall have the meaning provided therefor in the Plan.

"Entity" shall have the meaning provided therefor in the Code.

-2-

"Final Asset Cushion" means the greater of (a) $3 million of Cash, or (b) $3 million of Cash plus the additional Trust Assets that the Trustee determines, in his discretion, to retain for the benefit of Future Claimants after the Third Distribution Date to ensure that each holder of a Resolved Future Claim will receive aggregate Distributions equal to the amount of such Resolved Future Claim multiplied by the Applicable Percentage. When determining the amount of the Final Asset Cushion, the Trustee shall evaluate whether the payment of the Future Claims Note (as amended on the Recomputation Date) is reasonably assured based upon: (i) the amount outstanding under the Future Claims Note after the Recomputation Date; (ii) NEWCO's cash flow available to service the Future Claims Note and pay ongoing Trust Expenses and Loss Adjustment Expenses as required hereby; and (iii) the security for the Future Claims Note (including the Final Asset Cushion).

"Final Cushion Amount" shall be determined as of the Recomputation Date and means the sum of (a) the Final Asset Cushion, (b) the remaining principal balances of the LAE Note, if any, and Future Claims Note (as adjusted on the Recomputation Date), (c) the amount in the Trust Expense Escrow Account, and (d) the amounts of all reserves established by the Trustee for payment of future taxes or other liabilities of the Trust.

"Final Distribution" means the Distribution described in Section 4.5 herein.

"Future Claim" shall mean all causes of action, rights and interests of all persons, whether known or unknown, born or unborn, who may, after the Confirmation Date, assert a claim against the Debtor, NEWCO or the Trust for personal injury, property damage, wrongful death, damages, contribution and/or indemnification, based in whole or in part upon events occurring on or arising after the Confirmation Date (including, without limitation, claims based on the law of product liability, design defects and failure to warn), but only to the extent that liability exists because of aircraft or aircraft parts manufactured, sold, designed, distributed or supported by Old Piper or the Debtor prior to the Confirmation Date (including, without limitation, liability based on the law of product liability, design defects and failure to warn) unless and until such Future Claim becomes a Resolved Future Claim.

"Future Claimant" means any Entity asserting a Future Claim.

"Future Claims LAE Amounts" shall mean the portion of each installment paid under the Future Claims Note that is allocable to Loss Adjustment Expenses and Trust Expenses associated with Future Claims, as set forth in the amortization schedule attached to the Future Claims Note, including any amendment to that schedule effective as of the Recomputation Date.

"Future Claims Note" means the promissory note to be made by NEWCO and endorsed by the Debtor to the Trust in the form attached as Exhibit 1.43 to the Plan.

"General Reserve Account" means a depository account to be maintained by the Trustee in which the General Reserve Amount is deposited, subject to the terms hereof and of the Plan.

"General Reserve Amount" means the cash portion of the Trust Assets, as such exists from time to time, which the Trustee holds in the General Reserve Account.

"Indemnification and Contribution Rights" means all rights of Old Piper and the Debtor, contractual or otherwise, to indemnification, reimbursement, contribution or other payment arising out of or relating to any Asserted Liability Claim or Future Claim including, without limitation, in respect of any payment made or any loss, damage, cost, harm or expense incurred in connection therewith, whether arising out of strict liability, warranty, guarantee, tort, contract or otherwise.

"Initial Asset Cushion" means the greater of (a) $3 million of Cash, or (b) $3 million of Cash plus the Trust Assets (excluding the Trust Assets referenced in clauses (b) through (e) in the definition of "Initial Cushion Amount") remaining after the Second Distribution Date, retained to ensure that each holder of a Resolved Future Claim will receive aggregate Distributions equal to the amount of such Resolved Future Claim multiplied by the Applicable Percentage.

"Initial Cushion Amount" shall be determined as of the Second Distribution Date and means the sum of (a) the Initial Asset Cushion, (b) the remaining principal balances of the LAE Note, if any, and the Future Claims Note, (c) all prepayments on the Future Claims Note, and the accrued, after-tax earnings on such prepayments, (d) amounts in the Trust Expense Escrow Account, and (e) the amounts of all reserves established by the Trustee for payment of future taxes or other liabilities of the Trust.

-3-

"Initial Distribution Percentage" means the initial percentage, 35%, each holder of an Allowed Liability Claim and Resolved Future Claim will receive in respect of such holder's claim or Future Claim in accordance with the terms of the Plan.

"Insurer" shall mean as of any relevant time, any Entity that is providing product liability insurance coverage to NEWCO.

"Interim Distribution Date" means the date which is 545 days after the Effective Date.

"Judgment" means: (i) any judgment, order, decree or other ruling of the Court or the District Court that is final and binding (and no longer appealable) upon the Trust, the Trustee, or the Trust's property, pursuant to which any relief, whether legal or equitable in nature, shall be granted in respect of an Asserted Liability Claim or Future Claim (including, without limitation, the establishment or fixing of any liability with respect thereto); or (ii) any arbitration decision rendered in accordance with Section 4.10(f)(ii) hereof.

"LAE Note" means the promissory note to be made by NEWCO and endorsed by the Debtor to the Trust in the form attached as Exhibit 1.54 to the Plan.

"Legal Representative" means David G. Epstein, Esq., in his capacity as court appointed representative for the Future Claimants, or his successors.

"Liability Claim" or "Present Claim" means a Claim classified in Class 8, 9, 10, 11 or 12 of Article IV of the Plan or an Administrative Tort Claim, if any, under the Plan.

"Loss Adjustment Expenses" means the sum of all costs and expenses of defense, adjustment and otherwise, including, without limitation, legal, expert and other professional fees and disbursements, incurred or to be incurred in connection with Asserted Liability Claims or Future Claims (including, without limitation, the fees and expenses of the Legal Representative and his professionals from and after the Effective Date).

"Old Piper" means Piper Aircraft Corporation as it existed and operated prior to the Petition Date or as it will exist after the Effective Date.

"Permanent Channeling Injunction" means an order or orders of the Court or the District Court permanently and forever staying, restraining, and enjoining any Entity from taking any action for the purpose of, directly or indirectly, asserting, prosecuting, proceeding, collecting, or receiving payment of, on, or with respect to any Asserted Liability Claim or Future Claim (other than actions brought to enforce any right or obligation under the Plan, this Agreement, any Exhibits to the Plan, or any other agreement or instrument between the Debtor and/or NEWCO and the Trust, which actions shall be in conformity and compliance with the provisions thereof) including, without limitation, any of the following:

(a)     commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without express or implied limitation, any thereof in a judicial, arbitral, administrative, or other forum) against or affecting any Protected Party, or any property or interests in property of any Protected Party;

(b)     enforcing, levying, attaching (including, without express or implied limitation, any prejudgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Protected Party or any property or interests in property of any Protected Party;

(c)     creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien or encumbrance against any Protected Party or any property or interest in property of any Protected Party;

(d)     setting off, seeking reimbursement of, contribution from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Protected Party or any property or interests in property of any Protected Party; and

(e)     proceeding in any manner in any place with regard to any matter that is subject to resolution pursuant to this Agreement, except in conformity and compliance herewith.

"Persons Entitled to Notice" means the Persons or entities listed in Exhibit "2" to this Agreement.

-4-

"Pledge Agreement" means The New Piper Aircraft, Inc. Pledge Agreement dated as of the Effective Date, as amended from time to time.

"Present Claim" or "Liability Claim" means a Claim classified in Class 8, 9, 10, 11 or 12 of Article IV of the Plan or an Administrative Tort Claim, if any, under the Plan.

"Product Liability Claim" shall have the meaning ascribed to such term in the Plan.

"Protected Party" means each of the following parties:

(a)     the Debtor;

(b)     Old Piper;

(c)     NEWCO;

(d)     any other Entity that, after the Effective Date, becomes a direct or indirect transferee of, or successor to, any assets of the Debtor, Old Piper, the Trust, or NEWCO (but only to the extent that liability is asserted to exist by reason of its becoming or being such a transferee or successor);

(e)     any Entity that, pursuant to the Plan or after the Effective Date, makes a loan to NEWCO, Old Piper, or the Trust or to a successor to, or transferee of, any assets of any of the Debtor, NEWCO, Old Piper, or the Trust (but only to the extent that liability is asserted to exist by reason of such Entity becoming or being such a lender or to the extent any pledge of assets made in connection with such a loan is sought to be upset or impaired);

(f)     any Entity to the extent he, she, or it is alleged to be directly or indirectly liable for the conduct of, claims against, or demands on any of the Debtor, Old Piper, the Trust, or NEWCO, on account of any Asserted Liability Claim or Future Claim by reason of one or more of the following:

(i)     such Entity's ownership of a financial or equity interest in the Debtor, NEWCO, or Old Piper, a past or present affiliate of the Debtor, NEWCO, or Old Piper, or any predecessor in interest of the Debtor, NEWCO, or Old Piper;

(ii)     such Entity's involvement in the management of the Debtor, NEWCO, or Old Piper, or any predecessor in interest of the Debtor, NEWCO, or Old Piper;

(iii)     such Entity's service as an officer, director, consultant, employee, attorney or agent of any of the Debtor, NEWCO, or Old Piper, any past or present affiliate of the Debtor, NEWCO, or Old Piper, any predecessor in interest of the Debtor, NEWCO, or Old Piper, or any Entity that owned a financial interest in the Debtor, NEWCO, or Old Piper, any past or present affiliate of the Debtor, NEWCO, or Old Piper, or any predecessor in interest of the Debtor, NEWCO, or Old Piper (the "Related Parties"); or

(iv)     such Entity's provision of insurance to NEWCO; or

(g)     the Legal Representative, and his professionals.

"Recomputation Date" shall mean the date as soon as practicable after the later to occur of (i) the Second Distribution Date or (ii) the seven year anniversary of the Effective Date.

"Resolved Future Claim" means a Future Claim for which the Trust has been found to be liable for a specified amount of damages by a Judgment or which the Trustee has resolved by binding arbitration or settled by written agreement in accordance with the provisions of this Agreement.

"Second Distribution Date" shall mean the date as soon as practicable after the last to occur of (a) the date that the last Class 10 Claim and Class 11 Claim becomes an Allowed Claim or is finally disallowed; (b) the first to occur of (i) the date that the final payment of principal and interest is made in respect of the Junior Secured Note, or (ii) the date that a determination

is made by the Trustee that any unpaid portion of the Junior Secured Note cannot be satisfied, which determination shall be made in the sole and absolute discretion of the Trustee, or (iii) the date that the Junior Secured Note is sold by the Trustee to a third party with NEWCO's consent; or (c) the second anniversary of the Effective Date; provided, however, that the Second Distribution Date shall in no event occur later than seven years after the Effective Date, unless further extended by Court order or as is permitted or required by this Agreement.

"Second Report" means the actuarial report selected by the Trustee from the reports prepared by Milliman & Robertson ("M&R") and Tillinghast (or in the event either such actuarial firm ceases to exist, a substitute to be designated by the Trustee in his discretion) as described in paragraph 4.3 hereof.

"Shareholders' Agreement" means the Shareholders' Agreement to be executed and delivered in connection with the APLAA, as amended from time to time.

"Third Distribution Date" means the date, as soon as practicable, after the Recomputation Date on which the Trustee may make (a) the final Distribution with respect to Allowed Claims in Classes 10 and 11, (b) the only Distributions to Class 12 and to Old Piper for subsequent Distribution to Interest holders, and (c) Distributions to Resolved Future Claims.

"Trust" means the trust created by this Agreement.

"Trust Assets" means all property paid by or indorsed by the Debtor or NEWCO to or in favor of the Trust pursuant to the Plan and this Agreement, including, without limitation, the Trust Expense Amounts, all Transferred Claims, any other assets hereafter acquired by the Trustee in accordance with his duties hereunder, and all earnings and proceeds of the foregoing (including, without limitation, any interest earned thereon).

"Trust Beneficiaries" means all Claimants and holders of Interests.

"Trust Expenses" means those costs and expenses related to the administration of the Trust incurred by the Trust, the Trustee, his agents and employees, while in the furtherance of Trust matters, inclusive of fees to the Trustee as well as all fees of professionals and others who perform services for the Trustee hereunder, but exclusive of (i) underwriting discounts, brokerage commissions and investment banking fees directly related to the sale of the Trust Stock and taxes attributable to the Trust Assets or income or gains in respect thereof, and (ii) Loss Adjustment Expenses.

"Trust Expense Amounts" means those funds which NEWCO or the Debtor transfers to the Trust, from time to time, for deposit into the Trust Expense Escrow Account for the payment of Trust Expenses as set forth herein or in the Plan, and includes all payments made by NEWCO with respect to the LAE Note and the Future Claims LAE Amounts.

"Trust Expense Escrow Account" means a depository account to be maintained by the Trustee and consisting of the Trust Expense Amount as it exists from time to time.

1.2    *Treatment of Accounts.* For purposes of this Agreement, unless otherwise expressly prohibited, the Trustee may pool for investment purposes any funds required to be deposited in a separate account under the terms of this Agreement or the Plan, provided that the Trustee treats such funds as segregated accounts in the books and records of the Trust. In addition, notwithstanding any requirement that Distributions hereunder to any Person on a single day be made from a separate account, disbursements may be made as a single aggregate disbursement to such Person; provided, however, that the Trustee shall treat the funds so disbursed as having been disbursed from the segregated accounts in the Trustee's books and records.

## ARTICLE II

### TRUSTEE'S ACCEPTANCE AND ASSUMPTION; NOVATION

2.1    *Acceptance.* The Trustee accepts the Trust created by this Agreement and the transfer and assignment to the Trust, on behalf of and for the benefit of the Trust Beneficiaries, of the Initial Trust Assets as set forth in the Plan, and agrees to observe and perform the Trust, upon and subject to the terms and conditions set forth herein and in the Plan.

2.2    *Assumption of Liabilities and Indemnification.* This Trust is the trust established for the benefit of holders of Asserted Liability Claims, Future Claims and Interests, as identified in the Plan and in the Permanent Channeling Injunction.

The Trust hereby assumes, and agrees to indemnify and hold the Debtor, Creditor Board, NEWCO, any Insurer, Legal Representative and the Trustee (as well as their respective stockholders, affiliates, subsidiaries, parents, officers, directors, agents, and professionals) harmless against all damages, settlements, fines, penalties and expenses (including reasonable attorneys' fees, costs and expenses of defense) incurred in connection with the Asserted Liability Claims and Future Claims (whether or not such Asserted Liability Claims and Future Claims become Allowed Liability Claims or Resolved Future Claims, as the case may be), as well as all claims asserted by or on behalf of Interest holders. Notwithstanding the foregoing, the Trust shall not assume or indemnify an Insurer against (i) any fees or expenses of counsel separate from counsel engaged to represent NEWCO (provided this shall not affect the Trust's rights to assume the defense of Asserted Liability Claims and Future Claims, and, upon such assumption, any counsel engaged by Newco or any Insurer shall be at their sole cost and expense), or (ii) any fees or expenses or liabilities arising from any controversy between the Insurer and NEWCO regarding the scope of or exclusions from coverage or otherwise. Notwithstanding the foregoing, the Trust does not assume, and does not agree to indemnify Newco for, that part of any Future Claim based upon Newco's failure to warn regarding an allegedly defective product, design, or component where, after the Effective Date, Newco either acquired, or reasonably should have acquired, information which (i) reasonably should have led Newco to warn regarding the allegedly defective product, design or component; and (ii) was not known, and reasonably could not have been known, by Old Piper prior to the Effective Date. In addition to any other available rights or remedies (including common law rights), which shall not be deemed impaired or superseded by this Agreement, NEWCO may offset any matured and liquidated indemnification obligation of the Trust against payments due or coming due under the Junior Secured Note Documents (the "Offsetted Payments").

In addition to the aforementioned indemnification obligations, the Trust shall bear all of its costs of defense, including attorneys' fees, and shall satisfy any and all Judgments in respect of Asserted Liability Claims and Future Claims in accordance with the terms hereof and of the Plan. The Trustee may not withdraw any funds from the Trust Expense Escrow Account to make payment under any of its indemnification responsibilities under this paragraph and such payments shall be made solely out of the Trust Assets other than the Trust Expense Escrow Account. The Trustee shall allocate indemnification payments and Offsetted Payments (in each case, other than in respect of Loss Adjustment Expenses) between Present Claims and Future Claims, and shall, if such indemnification payments and Offsetted Payments are disproportionate, adjust the Distributions to the other Resolved Future Claimants in his reasonable discretion. The Trust shall have the same defenses, cross-claims, offsets, and rights of recoupment in respect of the Asserted Liability Claims and Future Claims that the Debtor, NEWCO or Old Piper has or would have under applicable bankruptcy and non-bankruptcy law. In addition, except as otherwise provided in this Agreement, the Trust shall be entitled to assert all of its common law indemnification and contribution rights.

Nothing in this Agreement shall be construed in any way to limit the scope, enforceability, or effectiveness of (i) the Permanent Channeling Injunction issued by the Court in connection with the Plan or (ii) the Trust's assumption of all liability with respect to Asserted Liability Claims, Future Claims and Interests.

2.3    *Novation.* The confirmation of the Plan by the Court, the Trustee's acceptance of this Trust and its acceptance of the Initial Trust Assets from the Debtor, and the assumption by the Trust of the liabilities and obligations of the Debtor to make Distributions shall constitute a complete novation by the Trust of all Allowed Liability Claims and Resolved Future Claims, and NEWCO and the Debtor shall be relieved of any and all liability in respect thereof.

2.4    *Transferred Claims.* Subject to the terms and conditions of this Agreement and the Plan, all Transferred Claims are hereby conveyed, transferred and assigned to the Trust. The Trustee shall be entitled, without notice to or consent of the Debtor, to assert Indemnification and Contribution Rights and to receive and retain as Trust Assets any payments made with respect to such rights. The Debtor will take such action as is reasonably necessary or appropriate to enable the Trustee to enforce such Indemnification and Contribution Rights and the other Transferred Claims.

# ARTICLE III

## ESTABLISHMENT OF ACCOUNTS

Upon receipt, or as soon thereafter as is reasonably practicable, the Trustee shall deposit: (i) the General Reserve Amount in the General Reserve Account; and (ii) the Trust Expense Amounts in the Trust Expense Escrow Account.

# ARTICLE IV

## GENERAL

4.1     *Interim Distribution.*

(a)        Within forty-five (45) days of the Effective Date, or as soon thereafter as is reasonably practicable, the Trustee shall make (i) a Cash Distribution to each holder of an Allowed Small Claim in an amount equal to fifty percent (50%) of such Allowed Small Claim, and (ii) a Cash Distribution to each holder of a Compromised Product Liability Claim in an amount equal to $10,000. On the Effective Date of the Plan, or as soon thereafter as is reasonably practicable, the Trustee shall make a Cash Distribution to all Claimants holding Allowed Claims in Class 10 or Class 11 or Resolved Future Claims in an amount equal to the Initial Distribution Percentage of each such Allowed Claim or Resolved Future Claim, respectively. Thereafter, the Trustee shall make a Cash Distribution with respect to each asserted Class 10 or Class 11 Claim or Future Claim that becomes an Allowed Claim or Resolved Future Claim, as the case may be, in an amount equal to the Initial Distribution Percentage of such Allowed Claim or Resolved Future Claim. However, the Trustee shall not make Distributions of the Initial Distribution Percentage to Asserted Liability Claims that become Allowed Liability Claims after the Interim Distribution Date; after the Interim Distribution Date, the Trustee shall make no further Distributions to Asserted Liability Claims or Allowed Claims until the Second Distribution Date. However, from and after the Interim Distribution Date through the Second Distribution Date, the Trustee shall make Distributions in Cash to the holders of Future Claims which become Resolved Future Claims during such time period, in an amount equal to the Initial Distribution Percentage of each such Resolved Future Claim. Notwithstanding any other provision of this Agreement, the holders of Allowed Class 12 Claims and Class 13 Interests shall not be entitled to any Distributions pursuant to this Section 4.1(a).

Notwithstanding the provisions of this paragraph, the Trustee may, in his discretion, settle any Future Claim for the immediate payment of up to $10,000.

(b)        On or about the Effective Date, the Trustee shall make one Distribution of $500,000 in respect of Class 13 Interests, and shall pay the lesser of (i) $100,000 or (ii) fifty percent (50%) of the fees and costs allowed by the Court, to the law firm of Schulte, Blum, McMahon & Joblove in respect of its services as counsel for the Class 13 Interests.

4.2     *Second Distribution.* The Trustee shall make Distributions on the Second Distribution Date in accordance with this Section 4.2 unless NEWCO is unable to deliver a certificate executed by its Chief Financial Officer or Chief Executive Officer that to the best of his knowledge there has not occurred (i) an Event of Default, as defined in the Loan and Security Agreement, which is continuing or (ii) a state of facts which, with the giving of notice or passage of time or both, would constitute such an Event of Default, and that the NEWCO ratio of aggregate Cash Flow Before Fixed Charges (as defined in the Loan and Security Agreement) to aggregate Fixed Charges (as defined in the Loan and Security Agreement) for the last two fiscal quarters was not less than 1.2:1 (the "Certificate"). The Trustee may make Distributions on the Second Distribution Date even if NEWCO is unable to deliver such Certificate if, After Notice and a Hearing (which, for purposes of this paragraph 4.2 shall also require at least 30 days notice to the holders of Resolved Future Claims, Future Claims that have asserted claims against the Trust, and the Legal Representative), the Court approves the proposed Distributions.

On the Second Distribution Date, if there is insufficient Cash in the Trust to make payments of Cash to the extent of the Initial Distribution Percentage of the aggregate amount of Allowed Claims in Classes 10 and 11 and Resolved Future Claims that had not previously received Distributions under this Agreement, the Trustee shall pay to the holders of such Allowed Claims and Resolved Future Claims all Cash included in the Trust Assets, pro rata, in proportion to the amount of Cash available for Distribution divided by the aggregate amount of Allowed Class 10 and 11 Claims and Resolved Future Claims in respect of which no interim Distributions were made; provided, however, that notwithstanding the foregoing, the Trustee shall retain in the Trust the Initial Cushion Amount.

On the Second Distribution Date, if there is sufficient Cash to make a distribution of the Initial Distribution Percentage to the holders of Allowed Class 10 and 11 Claims and Resolved Future Claims (in respect of which no interim Distributions were made), then the Trustee shall thereafter distribute all of the remaining Trust Assets (except the Initial Cushion Amount, which shall be retained in the Trust) to all holders of Allowed Class 10 and Allowed Class 11 Claims and Resolved Future Claims so that each such Claimant receives an equal percentage of the principal amount of such Allowed Liability Claim or Resolved Future Claim; provided, however, that the aggregate percentage Distributions received by holders of Allowed Liability Claims and holders of Resolved Future Claims as of the Second Distribution Date shall not exceed 100% of the principal amount thereof.

Payments made from the Trust with respect to Resolved Future Claims will be made or deemed to be made from the Trust Assets pursuant to this Section 4, in the following order: (a) first, from payments made with respect to the Future Claims Note and the interest accumulated thereon; (b) second, from the remaining portion of the $28,500,000 Cash included in the Initial Trust Assets and from interest accumulated on such Cash; (c) third, from payments made with respect to the Junior Secured Note and interest accumulated thereon; and (d) finally, if the foregoing amounts are not adequate, from the proceeds of the Trust Stock. Notwithstanding any other provision of this Agreement, no prepayments made with respect to the Future Claims Note, or accrued interest on such prepayments, shall be used to make Distributions prior to or on the Second Distribution Date.

After the Second Distribution Date and through the Final Distribution Date, the Trustee will make Distributions of Cash in respect of Resolved Future Claims in amounts that do not exceed the Applicable Percentage, at such times and in such amounts as the Trustee shall determine to be appropriate to ensure equal percentage distributions among holders of Resolved Future Claims and to respond to timing differences between payments on the Future Claims Note and resolution of Future Claims. The Initial Asset Cushion and the Final Asset Cushion shall secure NEWCO's obligations under the Future Claims Note, and the Trustee may, in his discretion, use the Initial Asset Cushion and/or the Final Asset Cushion to fund distributions in respect of the Resolved Future Claims. Notwithstanding any other provision of this Agreement, the Holders of Allowed Class 12 Claims and Class 13 Interests shall not be entitled to any Distributions pursuant to this Section 4.2.

4.3     *The Recomputation Date.* Not earlier than 90 days before the proposed Recomputation Date, the Trustee shall direct M&R and Tillinghast (or successor actuarial firm(s) selected by the Trustee if the foregoing no longer exist) to prepare the actuarial reports that will be used to select the Second Report. These actuarial reports shall project at a ninety percent (90%) confidence level: (i) the aggregate undiscounted projected amount of losses related to Future Claims that are not Resolved Future Claims (excluding Loss Adjustment Expenses) as of the Recomputation Date; (ii) the Loss Adjustment Expenses that are associated with Future Claims that are not Resolved Future Claims as of the Recomputation Date; (iii) the after-tax rate of return on Trust Assets that will remain in the Trust after the Recomputation Date, over the period covered by such actuarial report taking into account the kinds of investments the Trustee is permitted to make as described in Section 4.8(a) hereof; and (iv) the costs and expenses of administering the Trust after the Third Distribution Date. The Second Report shall also compute the ratio of (A) (i) the aggregate amount of Resolved Future Claims as of the Recomputation Date plus the aggregate undiscounted projected amount of losses related to Future Claims that are not Resolved Future Claims (excluding Loss Adjustment Expenses and Trust Expenses) as of the Recomputation Date, multiplied by (ii) the Applicable Percentage, minus the sum of (i) the aggregate Distributions previously made by the Trust with respect to Resolved Future Claims (including Distributions to be made in respect of Resolved Future Claims on the Third Distribution Date) plus (ii) the projected after-tax interest income to be earned on the Final Asset Cushion (calculated using the after-tax rate of return set forth in the Second Report), to (B) the sum of items (ii) and (iv) in the preceding sentence. This ratio shall be the ratio between said items (A) and (B) for purposes of the recomputed amortization schedule for the Future Claims Note.

On the Recomputation Date, the Trustee shall select the Second Report and NEWCO shall, if required, execute and deliver to the Trustee documents amending the Future Claims Note to increase, if necessary, the remaining outstanding principal amount of the Future Claims Note so that the payments of principal and interest combined on the Future Claims Note (as amended) from and after the Third Distribution Date will be equal to (a)(i) the aggregate amount of Resolved Future Claims as of the Recomputation Date plus the aggregate undiscounted projected amount of losses related to Future Claims that are not Resolved Future Claims (excluding Loss Adjustment Expenses and Trust Expenses) as of the Recomputation Date, multiplied by (ii) the Applicable Percentage, minus (b) the sum of (i) the aggregate Distributions previously made by the Trust with respect to Resolved Future Claims (including Distributions to be made in respect of Resolved Future Claims on the Third Distribution Date) plus (ii) the projected after-tax interest income to be earned on the Final Asset Cushion (calculated using the after-tax rate of return set forth in the Second Report), plus (c)(i) the aggregate undiscounted projected amount of Loss Adjustment Expenses that are associated with Future Claims that are not Resolved Future Claims as of the Recomputation Date, and (ii) the costs and expenses of administering the Trust after the Third Distribution Date, all as set forth in the Second Report. Scheduled payments

under the Future Claims Note (as amended) shall not exceed $3,500,000 in any consecutive 12-month period after the Recomputation Date, and the maturity of the Future Claims Note shall be extended if required to amortize on a straight-line basis the Future Claims Note, as and if amended as aforesaid. On the Recomputation Date, the interest rate on the Future Claims Note shall be reset at the Applicable Federal Rate in effect as of the Recomputation Date.

4.4     *Third Distribution Date.*

(a)     At the Third Distribution Date, the Trustee shall make Distributions in respect of Resolved Future Claims in an amount equal to (a) the result obtained by multiplying (i) the Applicable Percentage by (ii) the aggregate principal amount of all Resolved Future Claims minus (b) the aggregate amount of all Distributions previously made in respect of Resolved Future Claims, unless the Trustee determines that all holders of Future Claims are reasonably assured of receiving Distributions equal to the amount of their respective Resolved Future Claims multiplied by the Applicable Percentage, plus interest as set forth in section 4.4(c). If the Trustee so determines, the Trustee may, in his discretion, defer a portion of the Distributions then payable to the holders of Resolved Future Claims and instead distribute Trust Assets as described in paragraphs 4.4(c), (d) and (e).

(b)     Any Distributions under paragraph 4.4(c), (d) or (e) below, shall only be made After Notice and a Hearing. For purposes of this paragraph After Notice and Hearing requires giving at least 30 days' written notice of the Trustee's intentions to the holders of Resolved Future Claims and Future Claims that have been asserted against the Trust, the Legal Representative and Interest holders. The written notice shall (i) set forth the amount of the Final Asset Cushion, (ii) identify the amount of Trust Assets to be distributed (other than the Final Cushion Amount) to Trust Beneficiaries other than the holders of Resolved Future Claims, and (iii) specify the amount of Resolved Future Claims that will not receive Distributions on the Third Distribution Date to the extent of the Applicable Percentage.

(c)     The Trustee may distribute all Trust Assets on the Third Distribution Date (other than the Final Cushion Amount, which shall be retained in the Trust) to holders of Allowed Claims in Classes 10 and 11, pro rata, and, subject to the subordination provisions hereof and of the Plan, distribute proceeds remaining after full payment with accrued interest of Allowed Claims in Classes 10 and 11 of the Plan to holders of Allowed Class 12 Claims, pro rata. Notwithstanding any other provision of this Agreement, no holder of an Allowed Liability Claim or Interest shall be entitled to receive any Distribution subsequent to the Third Distribution Date. If, as of the Third Distribution Date, any holder of a Resolved Future Claim has not received aggregate Distributions in an amount equal to such Resolved Future Claim multiplied by the Applicable Percentage (as a result of the Trustee's decision to defer a portion of such Distributions), then the aggregate amount of Distributions due in respect of Resolved Future Claims as of the Third Distribution Date that do not receive full payment at the Applicable Percentage shall bear interest at the then current Applicable Federal Rate until such Distributions are made.

(d)     If the aggregate amount of Distributions made to holders of Allowed Claims in Classes 10 and 11 of the Plan equals the full principal amount of such Allowed Claims plus interest thereon from the Petition Date, at a rate to be determined by the Court, then the Trustee shall make Distributions to holders of Allowed Class 12 Claims on the Third Distribution Date. The Trustee shall make Distributions (subject to the Trustee's obligation to retain the Final Cushion Amount in the Trust) to the holders of Allowed Class 12 Claims, pro rata, subject to subordination as aforesaid in proportion to the principal amount owed to each Claim holder thereof, up to an amount or value equal to the principal amount of the Allowed Class 12 Claims plus interest thereon from the Petition Date, at a rate to be established by the Court.

(e)     If the aggregate amount of Distributions made to holders of Allowed Claims in Classes 10, 11 and 12 of the Plan equals the full principal amount of such Allowed Claims plus interest thereon from the Petition Date, at a rate to be determined by the Court, then the Trustee shall make a Distribution on the Third Distribution Date of the then remaining Distributable Assets, excluding the Final Cushion Amount (which shall be retained in the Trust), to the holder of Class 13 Interests.

4.5     *Final Distribution.* As the Final Distribution Date approaches, the Trustee shall have discretion to apply any part of the Final Asset Cushion or excess amounts in the Trust Expense Escrow Account in reduction or satisfaction of the next maturing installments coming due on the Future Claims Note so that the Final Asset Cushion and any excess amounts in the Trust Expense Escrow Account would be reduced to zero upon the satisfaction of the Future Claims Note; provided, however, that the Trustee shall only apply part of the Final Asset Cushion and any excess funds in the Trust Expense Escrow Account to payments due on the Future Claims Note if the Trustee has determined that all Future Claimants are reasonably assured of receiving Distributions equal to the amount of their respective Resolved Future Claims multiplied by the Applicable Percentage.

On the Final Distribution Date, the Trustee shall distribute the remaining Trust Assets (exclusive of amounts reserved to pay liabilities of the Trust) to the holders of Resolved Future Claims, pro rata (after giving effect to previous Distributions to the holders of Resolved Future Claims) to the extent required to bring aggregate Distributions to holders of Resolved Future Claims to an amount equal to the Applicable Percentage of each Resolved Future Claim, plus interest thereon to the extent payable hereunder. Any Trust Assets remaining after the Distribution pursuant to the immediately preceding sentence shall be paid to NEWCO.

4.6     *Unclaimed Dividends.* Distributed funds which remain unclaimed for one hundred and eighty (180) days after any Distribution shall be deemed "Unclaimed Dividends." Unclaimed Dividends shall be transferred to the Trust Expense Escrow Account and applied as prepayments on the LAE Note.

4.7     *Reports.*

(a)     The Trustee shall furnish to the Creditor Board, the Legal Representative, Romeo Charlie, Inc. ("RCI"), and NEWCO, as soon as practicable, and in any event within 45 days after the end of each quarter (beginning with the quarter ending December 31, 1995 and thereafter), a report describing all transactions and the amounts thereof (including all Distributions, settlements of Disputed Claims and Future Claims and claims for relief, and other disbursements, along with a reasonably detailed description of the nature and type of expenses incurred and the amount of investment income earned by the Trust) consummated during the report period.

(b)     The Trustee shall furnish to the Creditor Board, RCI, the Legal Representative and NEWCO, and shall file with the Court, and make available to holders of Allowed Liability Claims, Resolved Future Claims and Future Claims of which the Trustee has notice, if requested in writing, as soon as practicable after the end of each calendar year (beginning with the year ending December 31, 1995), and in any event within one hundred and twenty (120) days after the end of each such year, an annual report containing financial statements of the Trust (including a balance sheet as of the end of such year and a statement of operations for such year) audited by a firm of independent public accountants selected by the Trustee and prepared in conformity with generally accepted accounting principles. Such firm may, at the Trustee's request, perform such other reviews and/or audits as the Trustee believes appropriate, in which event all such other reports shall be delivered to the Creditor Board.

(c)     The Trustee shall prepare and provide to or file with the appropriate entities or authorities such notices, tax returns and other filings, and shall pay all taxes as may be required by applicable law.

(d)     The Trust shall furnish NEWCO with access to its books and records at reasonable times and upon reasonable notice.

4.8     *Investment Obligations.*

(a)     Except as otherwise provided in this Agreement, the General Reserve Amount, Trust Expense Amounts and all Trust Assets other than the Trust Stock and promissory notes issued by NEWCO shall be invested by the Trustee with sole and absolute discretion in only: (i) direct obligations of, or obligations guaranteed by, the United States of America; (ii) obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States as an agency or instrumentality thereof; (iii) AAA rated or insured tax-free securities issued by municipalities or state governments or agencies, or funds invested solely in such securities; or (iv) such other obligations or instruments as may from time to time be approved for such investments by the Creditor Board; provided, however, that the Trustee may, to the extent deemed necessary by the Trustee with sole and absolute discretion to implement the provisions of this Agreement, deposit moneys in demand deposits at any bank or trust company which has, at the time of such deposit, a capital stock and surplus aggregating at least $100,000,000. Such investments shall mature in such amounts and at such times as may be deemed necessary by the Trustee with sole and absolute discretion to provide funds when needed to make payments from the Trust Assets.

(b)     Any investment purchased with Trust Assets shall be deemed a part of the Trust Assets. All interest and distributions received by the Trustee in respect of investments constituting part of the Trust Assets shall be a part of the Trust Assets. If at any time it shall become necessary that some or all of the investments constituting Trust Assets be redeemed or sold in order to raise money necessary to comply with the provisions of this Agreement or the Plan, the Trustee shall effect such redemption or sale, in such manner and at such time as the Trustee, in his sole and absolute discretion, deems reasonable.

(c)     The Trustee shall be authorized to take such actions as he may deem necessary to perform the obligations of the Trust, including the hiring of employees and professional persons to assist in such performance. The Trustee is further authorized to pay reasonable fees and expenses to such employees and professional persons in such amount and at such times as the Trustee, in his sole and absolute discretion, deems advisable.

4.9     *Obligations With Respect to Asserted Product Liability Claims and Future Claims.* The Trust shall be solely responsible for the resolution and satisfaction of asserted Product Liability Claims and Future Claims pursuant to Article IV hereof, the Permanent Channeling Injunction, and the Plan.

(a)     Upon receipt of notice of an Asserted Liability Claim or Future Claim, the Trustee, NEWCO, or other Protected Party, as the case may be, shall provide written notice to the Claimant that the Permanent Channeling Injunction requires that the Asserted Liability Claim or Future Claim, as the case may be, shall be asserted and directed solely against the Trust, and that the Trust has, in accordance with this Agreement, the Permanent Channeling Injunction, and the Plan, assumed the obligations with respect to such Asserted Liability Claim or Future Claim and that all communications with respect thereto are to be directed to the Trust, and that such Asserted Liability Claim or Future Claim shall be resolved only under the procedures contained in this Agreement. In the event notice of an asserted Present Claim or Future Claim is received by NEWCO or any Insurer, NEWCO or such Insurer shall immediately send a copy thereof to the Trustee and the Trustee shall thereafter assume control of the defense provided that NEWCO or any Insurer may engage, at its sole cost and expense, separate counsel to assist in the defense. The Trust may be substituted for the Debtor, NEWCO or any Insurer as a party in any legal proceedings commenced with respect to a person or entity asserting any such Product Liability Claim or Future Claim.

(b)     The Trustee shall have authority to engage the services of investigators, trial attorneys, expert witnesses, and litigation support specialists, as necessary, to resolve asserted Product Liability Claims and Future Claims. Such persons or firms shall be entitled to receive, and the Trustee shall be entitled to pay, reasonable compensation for their actual and necessary services and reimbursement of their reasonable, actual, and necessary expenses. All such expenses shall constitute Trust Expenses and shall be paid from the Trust Expense Escrow Account.

4.10     *Asserted Product Liability Claim and Future Claims Procedures; Bar.*

(a)     Purpose. It is a purpose of the Trust to provide a system for the prompt and efficient resolution and payment of all asserted Product Liability Claims and Future Claims.

THE FAILURE OF A CLAIMANT TO COMPLY WITH ANY OF THE PROCEDURES CONTAINED IN THIS AGREEMENT SHALL BAR SUCH CLAIMANT FROM THE FURTHER PROSECUTION OF ITS CLAIM OR FUTURE CLAIM AND OF THE RIGHT TO RECEIVE DISTRIBUTIONS UNDER THE PLAN AND THIS AGREEMENT. STRICT COMPLIANCE WITH THE TERMS AND CONDITIONS OF THIS AGREEMENT IS MANDATORY. THE FAILURE OF A HOLDER OF A PRESENT CLAIM TO HAVE FILED A FORM PROOF OF CLAIM AGAINST THE DEBTOR IN ACCORDANCE WITH THE COURT ORDERS DATED AUGUST 26, 1991 AND APRIL 8, 1994, ALONG WITH A COMPLETED FORM QUESTIONNAIRE (WHICH WAS APPROVED BY ORDER OF THE COURT DATED APRIL 8, 1994), SHALL BAR THE CLAIMANT FROM PROSECUTION OF ITS CLAIM AGAINST NEWCO, THE DEBTOR, AND THIS TRUST AND FROM RECEIVING DISTRIBUTIONS UNDER THIS AGREEMENT AND UNDER THE PLAN. ANY HOLDER OF AN ASSERTED PRODUCT LIABILITY CLAIM WHO HAS NOT TIMELY FILED OR ASSERTED A CLAIM AGAINST THE DEBTOR WILL NOT BE PERMITTED TO PARTICIPATE IN DISTRIBUTIONS UNDER THE PLAN. THE TRUST PROCEDURES FOR PRESENT CLAIMS AND FUTURE CLAIMS INCLUDE MANDATORY PRE-SUIT INVESTIGATION AND MEDIATION. BINDING ARBITRATION SHALL BE AVAILABLE UPON WRITTEN AGREEMENT OF THE PARTIES.

(b)     *Form Proof of Claim and Questionnaires.* Prior to confirmation of the Plan and approval of this Agreement by the Court, all creditors of the Debtor holding asserted Product Liability Claims were obligated to file form proofs of claim against the Debtor by orders of the Court dated August 26, 1991 and April 8, 1994. In addition, the Court's April 8, 1994 order required that all holders of asserted Product Liability Claims complete a form questionnaire and serve the same upon the Debtor on or before May 20, 1994 (or such later date as permitted by the April 8, 1994 Order). The August 26, 1991 and April 8, 1994 orders provide that the failure of a holder of an Asserted Liability Claim to file a form proof of claim and form questionnaire when, and as specified therein, would result in such claimant being forever barred, estopped, restrained and enjoined from asserting any such claim (or filing a proof of claim with respect thereto) against the Debtor, and that the Debtor and its property would be

forever discharged from any and all indebtedness or liability with respect to such claim, and that such claimant would not be permitted to participate in any Distributions under the Plan or this Agreement.

(c)     *Assertion of Future Claims.* Future Claims shall be deemed timely asserted against the Trust, for purposes of satisfying applicable statutes of limitation, and for entitlement to Distributions from the Trust, if the Future Claimant, within the period of time required under applicable non-bankruptcy law to satisfy applicable statutes of limitations, either (i) commences a legal proceeding based on a Future Claim, or (ii) delivers the Claim Form to the Trustee. The Trustee shall deliver to all Future Claimants, promptly after receiving notice of commencement of legal proceedings in respect of a Future Claim, the "Procedures Notice," which shall mean and include the materials, including the Claim Form, identified in Exhibit 3 hereto. The Future Claimant shall be required to furnish the Claim Form, Questionnaire and the Affidavits described in section 4.10(d), as defined and required pursuant to this Agreement and Exhibit 3 hereto, within 90 days from the date the Future Claimant receives the Procedures Notice, and subject to the requirements hereof and thereof.

**THE FAILURE OF A FUTURE CLAIMANT TO FILE A CLAIM FORM AND QUESTIONNAIRE WITH THE TRUSTEE WITHIN THIS 90 DAY PERIOD SHALL BAR THE FUTURE CLAIMANT FROM PROSECUTION OF ANY CLAIM, RIGHT, OR INTEREST AGAINST THE DEBTOR, NEWCO OR THE TRUST AND FROM RECEIVING ANY DISTRIBUTIONS FROM THIS TRUST.**

(d)     *Pre-suit Investigation.* Pre-suit investigation is mandatory. All persons who have filed form proofs of claim and form questionnaires, as set forth in subsection 4.10(b) above, are required to submit three affidavits to the Trustee within 90 days of entry of the Court order confirming the Plan, and all Future Claimants are required to submit such affidavits to the Trustee within 90 days after receipt of the Procedures Notice from the Trustee as described above. The first affidavit shall be issued by a person qualified as an expert by knowledge, skill, experience, training or education (the "Expert Affidavit"), and shall specify in detail the bases upon which the Expert and the Claimant believe that the Trust, as successor by novation to the liabilities of Old Piper, NEWCO or the Debtor, as the case may be, is liable to the Claimant. The Expert Affidavit shall set forth in detail: (i) a listing of each alleged defect in the aircraft or part manufactured, designed, distributed, sold and/or supported by Old Piper, the Debtor or NEWCO and which is alleged to have given rise to the injury or incident underlying the asserted Product Liability Claim or Future Claim; (ii) the date(s) that the airplanes or parts were inspected by the Expert; (iii) the Expert's knowledge in the fields of aircraft technology, engineering, mathematics, avionics or any other fields of study which qualify the Expert to render an opinion; and (iv) a listing of all information received and persons interviewed by the Expert in compiling his or her report, and copies of the reports and information utilized in formulating such opinion. The second affidavit shall be given by the Claimant and his or her successors or assigns, and shall specify in detail the nature of any alleged injuries suffered or incurred by the Claimant, including any medical reports or analyses (the "Second Affidavit"). The Second Affidavit shall specify the measures and formula utilized in calculating the Claimant's damages, with specific references to books, statutory citations, medical reports or analyses and payroll records and employment histories of the injured person(s). The third affidavit shall be given by the Claimant or its counsel and shall state the present location and custodian of the aircraft and all of the parts thereof that are in any way alleged to be defective (the "Location Affidavit"). The affidavits, once completed, must be mailed to the Trustee, certified mail, return receipt requested, so as to be actually received within 90 days of entry of the Confirmation Order (in the case of holders of Asserted Product Liability Claims) or receipt of the Procedures Notice (in the case of Future Claimants) ("Investigation Period"). The Investigation Period may be extended by the Court, for cause shown, After Notice and a Hearing.

(e)     *Trustee's Response.* Within 180 days after receipt of the Expert Affidavit, Second Affidavit, and the Location Affidavit, as set forth in subparagraph (d) above (the "Trustee Investigation Period"), the Trustee shall respond thereto in writing. The Trustee Investigation Period may be extended by the Court, for cause shown, After Notice and a Hearing. During the Trustee Investigation Period, the Trustee, together with any professionals retained by him, shall conduct an investigation to ascertain whether there are reasonable grounds upon which to believe that the Debtor would have had liability with respect to the asserted Product Liability Claim or Future Claim, including, without limitation, whether such asserted Product Liability Claim or Future Claim is barred by the applicable statute of limitations or otherwise. The Trustee shall provide a written response to the Claimant regarding the Trustee's determination as to whether reasonable grounds exist to support Claimant's asserted Product Liability Claim or Future Claim and shall either:

(i)      make a settlement offer concerning the asserted Product Liability Claim or Future Claim; or

(ii)     initiate mandatory mediation.

The Trustee's response shall be d_____ to the Claimant by certified mail, return ____ipt requested. Within thirty (30) days after the receipt of the Trustee's response, the Claimant shall respond thereto in writing either accepting the Trustee's settlement offer, proposing a counter offer, or requesting a voluntary settlement conference (the "Response").

    (f)    Pre-trial Alternative Dispute Resolution Procedures.

        (i)    Mandatory Mediation. If the Trustee and the Claimant are unable to reach a settlement within 90 days of the Trustee's response, the asserted Product Liability Claim or Future Claim must be submitted to mandatory mediation, unless both parties agree in writing to utilize binding arbitration. The specific mediation procedures will be developed by an administrator (the "Administrator") selected by the Trustee and approved by the Court After Notice and a Hearing. As a general proposition, the following parameters will control the mandatory mediation procedure:

        (1)    Claims or Future Claims shall be handled by the mediator in the order received, to the extent practicable. The mediator shall meet with the parties and their legal representatives, individually and jointly. The Claimant and a representative of the Trustee with settlement authority must be present at the mediation, except where the Claimant's physical or psychological condition prohibits attendance. Such mediation shall be in the nature of a settlement conference and, to the extent practical, shall be conducted in a location convenient to the parties. The mediator shall review the claim and positions of the parties, the prior negotiations between the parties, the offer and demand, such information as the parties may wish to submit as to a fair and adequate settlement, and all documents, expert reports, and medical reports relevant to the Claim or Future Claim. At least five (5) days prior to the mediation, the Claimant and the Trustee shall each submit to the mediator a concise, confidential statement outlining the nature of the Claimant's damages, the issues regarding the Debtor's or NEWCO's liability for the alleged defect, and each party's position on settlement value.

        (2)    The mediator will work with both sides toward reaching an acceptable reasonable settlement. The mediator does not have the authority to impose a settlement upon the parties. Unless otherwise agreed by the Claimant and the Trustee, the mediation process will terminate 30 days after the commencement of the initial mediation conference. A settlement reached pursuant to mediation shall be treated as an Allowed Product Liability Claim or Resolved Future Claim, as the case may be. The mediator shall file a report with both parties within 10 days of the conclusion of mediation. The Trustee will bear the cost of the mediator and any related facility fee. Each party will be responsible for its respective legal costs, fees and travel related expenses.

        (3)    The duties of the Administrator shall include: providing for staff and facilities for mandatory mediation; maintaining panels of neutral, qualified mediators; notification to parties; scheduling mediators and supervising compensation of mediators. The Administrator shall have no financial interest in or relationship with any Claimant, the Trustee, or with any other entity which may be involved in this proceeding; provided, however, the Administrator may select and engage mediators who are associated with or employed by the Administrator. The Trust shall bear the costs of the Administrator.

        (ii)    Binding Arbitration. Upon the written agreement of the parties, the parties may, at any time, agree to submit the Asserted Liability Claim or Future Claim to binding arbitration. Submission of an Asserted Liability Claim or Future Claim to binding arbitration shall constitute a knowing, voluntary and irrevocable waiver of the Claimant's right, if any, to trial (by jury or otherwise) in respect thereof. This binding arbitration procedure will provide both parties a meaningful opportunity to present the merits of their respective cases.

        (1)    All binding arbitration proceedings shall be administered by an independent arbitration organization, mutually agreeable to the parties. Unless other rules are agreed to by the parties in writing, the arbitration shall be governed by the rules of the American Arbitration Association in effect from time to time.

        (2)    The Trustee will pay the fees (but not the Claimant's legal fees) and administrative costs of the arbitration proceeding; provided, however, the arbitrator may, in his or her sole discretion, assess fees and costs against any party delaying or abusing the arbitration procedures.

        (3)    The award shall be based upon the value of the Claimant's Asserted Liability Claim or Future Claim against the Trust, NEWCO or the Debtor, as the case may be, severally and not jointly.

(4)     The amount of the award shall be within the discretion of the arbitrator; provided, however, the Claimant shall not receive less than 75% of the Trustee's last settlement proposal immediately prior to the commencement of arbitration. Hence, all settlement-related communications and conferences between and among the parties shall be kept confidential and shall not be released by any party to the arbitrator.

(5)     Claims settled through binding arbitration proceedings shall be paid in accordance with the Plan and this Agreement. Neither party will have the right to appeal the award except for the grounds set forth in the applicable provisions of the Federal Arbitration Act. There will be no right to a trial de novo.

(iii)     The Court shall retain jurisdiction in the event of a dispute over these procedures.

(g)     Trial.

(i)     Subsequent to the procedures set forth in Section 4.10(f)(i) and subject to the provisions of Section 4.10(f)(ii), the Claimant shall have the right to pursue a Claim or Future Claim against the Trust in a District Court: (1) where no action against the Debtor or NEWCO is pending on behalf of the Claimant, by filing an action in a venue permitted by applicable federal law, and the Trustee will consent to jurisdiction and venue in any District Court where jurisdiction and venue would have been proper against the Debtor or NEWCO without prejudice to the rights of the Trustee to seek a transfer of venue or dismissal of the action for forum non-conveniens or any other grounds; or (2) where an action against the Debtor or NEWCO alone, against the Debtor or NEWCO and any other defendant, or against any other defendant is pending, and the Trustee will, within fifteen (15) days of receipt of notice of the Claimant's election to pursue an action in that forum, execute appropriate legal documents stipulating to (A) the substitution of the Trust as a party defendant for the Debtor or NEWCO; or (B) the joinder of the Trust as a party defendant in any federal action pending against any other defendant. In the event that the Trust becomes a party to any litigation in any District Court, it shall enter its appearance under the name and be known as "Piper Aircraft Corporation Irrevocable Trust."

(ii)     There shall be no right to claim or recover for any punitive damages.

(iii)     Except for the tolling of periods of limitations resulting from the bankruptcy proceedings and as otherwise provided herein, the Trust shall not be required to waive any defenses otherwise available to it at law.

(iv)     The submissions and positions of the parties in connection with the mandatory mediation procedures set forth herein and any admissions made during such mediation proceedings shall not be admissible for any purpose in the litigation or at trial by any party or third-party and are deemed hereby not to be admissions by either party; provided, however, notwithstanding anything contained in this Section 4.10(g)(iv) to the contrary, the affidavits exchanged by the Claimant and the Trustee pursuant to Sections 4.10(d) and (e) hereof may be admissible for impeachment purposes at trial.

(v)     With respect to Claims or Future Claims seeking compensatory damages only, the substantive law applicable at trial of such Claim or Future Claim against the Trust shall be the law which would have been applicable but for the pendency of the Chapter 11 proceedings. In determining the applicable law, it will be assumed that the action against the Trust was (1) filed or commenced (if not actually filed or commenced against the Debtor or NEWCO) at the same time as an action asserting such a Claim or Future Claim by the Claimant was filed against any other defendant; and (2) tried or settled at the same time as the Claimant's action was tried or settled (if actually tried or settled) with substantially all other defendants, so that the law applicable will be the same as the law applicable to the action against such other defendants.

(vi)     Notwithstanding the provisions of 11 U.S.C. 108(c), applicable statutes of limitation for the commencement of actions against the Debtor or NEWCO or the Trust shall be deemed tolled through the date that is 60 days after delivery of the mediator's report as described in Section 4.10(f)(i)(2), and for such additional period to which the parties may agree in writing, if any.

(vii)     Appeals may be taken in accordance with the Federal Rules of Civil Procedure and the Federal Rules of Appellate Procedure.

(h)     Administration of Allowed Product Liability Claims and Resolved Future Claims. Provided a Claimant is ultimately granted an Allowed Product Liability Claim or Resolved Future Claim in connection with: (i) an agreement reached by the Claimant and the Trustee; (ii) mandatory mediation or voluntary binding arbitration proceedings; or (iii) a Judgment, then

the Claimant shall be entitled to payment in respect of its Allowed Product Liability Claim or Resolved Future Claim out of the Trust and the Trust Assets under the terms of this Agreement and the Plan. The Claimant shall not be entitled to, nor shall it seek, the satisfaction of its Allowed Product Liability Claim or Resolved Future Claim from NEWCO or any of its assets or affiliates.

4.11    *Trustee Rights*. The Trustee shall be empowered to and shall prosecute objections to Asserted Liability Claims and Future Claims. The Trustee may also seek to subordinate, under Section 510(c) of the Code, the Claims of any Creditors, and have such Claims treated as Subordinated Claims under the Plan and hereunder. Any and all objections to Asserted Liability Claims (including Claims the Trustee seeks to subordinate) which are not filed prior to the entry of the Confirmation Order shall be filed by the Trustee within ninety (90) days thereafter, which period may be extended for cause shown After Notice and a Hearing. Notwithstanding the foregoing, the Trustee shall automatically be deemed to have timely and duly objected to every Future Claim, and no Future Claim shall be entitled to receive any Distributions until such Future Claim becomes a Resolved Future Claim pursuant to the provisions of this Agreement.

4.12    *Books and Records*. The Trustee shall provide to NEWCO reasonable access to the books and records of the Trust during normal business hours for the purpose of assisting NEWCO in preparing any tax returns or other reports which it may be required to file under applicable law. NEWCO shall retain all books and records pertaining to Asserted Liability Claims and Future Claims, and shall provide the Trustee and his agents reasonable access to its books and records during normal business hours for the purpose of and only as necessary to assist the Trustee in carrying out his duties hereunder.

4.13    *Reserves*. The Trustee may, in his sole discretion, create a reserve from Trust Assets (other than amounts on deposit in the Trust Expense Escrow Account) for the payment of taxes and other liabilities payable subsequent to a Distribution. If the taxes and/or other liabilities in respect of which a reserve is established are fully paid and do not exhaust the reserve, the Trustee shall make Distributions from the remaining amount of the reserve in accordance with the provisions of this Agreement. Excess reserves established prior to the Third Distribution Date shall be Distributed among holders of Allowed Liability Claims and Resolved Future Claims in accordance with the provisions of this Agreement, whether such excess becomes available before or after the Third Distribution Date. Reserves established after the Third Distribution Date may not be Distributed to holders of Allowed Liability Claims.

## ARTICLE V

## POWERS AND RIGHTS OF THE TRUSTEE

5.1    *Title*. Legal title to all Trust Assets shall be vested in the Trustee, except that the Trustee shall have the power to cause legal title (or evidence of title) to any of the Trust Assets to be held by any nominee or person, on such terms, in such manner, and with such power as the Trustee may determine in his sole and absolute discretion.

5.2    *Investments*. Subject to the provisions of this Agreement, the Trustee or any successor Trustee of the Trust shall have the continuing, absolute, discretionary power to deal with any property, real or personal, held in such Trust. Such power may be exercised independently and without the prior or subsequent approval of any court or judicial authority, and no person dealing with the Trustee shall be required to inquire into the propriety of any of the actions of the Trustee. The Trustee shall be limited to the type and character of investments in which the Trustee may invest the General Reserve Amount and the Trust Expense Amounts of this Trust as specifically set forth herein. The Trustee shall have the following specific powers and authority, in addition to, and not by way of limitation of, the powers provided by law:

(a)    To sell, transfer, exchange, convert or otherwise dispose of, or grant options with respect to the Trust Stock and the Junior Secured Note Documents (other than the LAE Note, which the Trustee shall not negotiate, assign or encumber), at public or private sale, with or without security, in such manner, at such time or times, for such purposes, for such prices and upon such terms, credits and conditions as the Trustee, in his sole and absolute discretion, may deem advisable, subject only to the provisions of the Shareholders' Agreement, the Pledge Agreement and Article VIII hereof.

(b)    To vote on any and all matters in person at meetings of shareholders of NEWCO, or any adjournment of such meetings, or to vote by general or limited proxy with respect to Trust Stock held by the Trust, subject only to the provisions of the Shareholders' Agreement.

-16-

(c)     To allocate, in the Trustee's sole and absolute discretion, in whole or in part, to principal or interest, all receipts and disbursements for which no express provision is made hereunder, which allocation shall fully protect the Trustee with respect to any action taken or payment made in reliance thereon.

(d)     To bring legal action with respect to enforcing any of the provisions of this Agreement, including but not limited to the obligations of NEWCO under Article VI hereof, as well as any default in the terms of the Junior Secured Note Documents, and to take whatever lawful actions are necessary to enforce the terms of the Junior Secured Note Documents or to obtain payment of principal and interest thereon including the right to waive, compromise and settle, in the Trustee's sole discretion.

(e)     To bring legal action with respect to any causes of action or claims which a shareholder could assert under applicable state or Federal law in the Trust's name, as representative of a class, or derivatively.

(f)     To execute and deliver any and all written instruments which are deemed advisable to carry out any of the foregoing powers. No party to any such instrument signed by the Trustee shall be obliged to inquire into its validity.

5.3     *Settlements of Disputed Claims or Future Claims.* The Trustee may settle or compromise Disputed Claims or Future Claims as follows:

(a)     The Trustee may settle a Disputed Claim or Future Claim without notice and a hearing if, as a result thereof, the holder of the Asserted Liability Claim or Future Claim will be entitled to an Allowed Liability Claim or Resolved Future Claim of not more than $250,000.

(b)     In all other instances, the Trustee may settle a Disputed Claim or Future Claim only After Notice and a Hearing.

(c)     All settlements of Disputed Claims and Future Claims shall be reported pursuant to Section 4.7 of this Agreement.

(d)     Notwithstanding paragraph 5.3(a) above, the Trustee may not settle a Future Claim for an amount which would result in a Resolved Future Claim in excess of $100,000 prior to the Recomputation Date, except After Notice and a Hearing at which NEWCO shall have standing to object if (i) the sum of (a) the proposed settlement amount plus (b) the aggregate amount of all Resolved Future Claims which are known as of that date, exceeds (ii) the initial principal amount of the Future Claims Note.

5.4     *Prosecution and Settlement of Claims for Relief.* The Trustee shall be empowered to prosecute and settle all claims for relief, including those based upon Sections 542, 543, 544, 547, 548, 549, 550 and 553 of the Code, and contribution and indemnity claims, as follows:

(a)     The Trustee shall, in his discretion, prosecute all claims for relief, including those based upon Sections 542, 543, 544, 547, 548, 549, 550 and 553 of the Code;

(b)     The Trustee may settle any such claim for relief, without notice to any parties and without any hearing or Court approval, if the amount originally sought by the Trustee on account of such claim for relief was $100,000 or less, or if the difference between the amount originally sought by the Trustee on account of such claim and the settlement amount is $100,000 or less;

(c)     In all other instances, the Trustee may settle such claims for relief only After Notice and a Hearing; and

(d)     All settlements shall be reported pursuant to Section 4.7 of this Agreement.

5.5     *Additional Powers.* Except as otherwise provided in this Agreement, the Shareholders' Agreement or in the Plan, and subject to the retained jurisdiction of the Court, the Trustee shall have, without prior or further authorization, control and authority over the Trust Assets, over the acquisition, management and disposition thereof, and over the management and conduct of the business of the Trust, to the same extent as if the Trustee was the sole owner thereof in his own right. No person dealing with the Trust shall be obligated to inquire as to the authority of the Trustee in connection with the acquisition, management or disposition of Trust Assets.

In connection with the management and use of the Trust Assets, the Trustee's powers, except as otherwise expressly limited in this Agreement, shall include, but shall not be limited to, the following:

(i)     to accept the Trust Assets distributed to the Trustee pursuant to the Plan;

(ii)    to distribute Trust Assets to the holders of certain Allowed Liability Claims, Resolved Future Claims and Interests as provided herein and in the Plan;

(iii)   to sell Trust Assets or any part thereof or any interest therein, upon such terms and for such consideration as he deems desirable, in his sole and absolute discretion, subject to Article VIII hereof;

(iv)    to prosecute any and all claims of the Debtor or its estate against third parties, including preferences, claims for relief and fraudulent conveyance claims and the subordination of claims;

(v)     to endorse the payment of notes or other obligations of any person or to make contracts with respect thereto;

(vi)    to appoint, engage, or employ officers, employees and other persons, firms or corporations, including consultants, accountants, technical, financial, or investment advisors or managers, attorneys, agents, corporate fiduciaries, depositaries, or such other persons, firms or corporations, as the Trustee, in his reasonable discretion, shall deem necessary or desirable, irrespective of whether any firm or corporation so employed shall be one in which a Trustee hereunder shall be a partner, stockholder or officer or shall have any interest, and to pay reasonable compensation for such services out of the Trust Expense Account as may be deemed advisable (and any Trustee who shall be a partner, stockholder or officer of any such firm or corporation shall nevertheless be entitled as partner, stockholder or officer to receive his share of the compensation paid to such firm or corporation), and to delegate to professional investment counsel from time to time power to make investment determinations hereunder, including without limitation, determinations as to the acquisition, retention or disposition of any asset or assets, by purchase, sale or otherwise;

(vii)   to pay Trust Expenses when they become due and to allocate general overhead expenses of the Trust pro rata between Asserted Claims, Allowed Claims, Future Claims and Resolved Future Claims;

(viii)  to deposit any monies or securities with any one or more banks, trust companies or other financial institutions upon such terms as the Trustee shall determine;

(ix)    to engage in all acts in furtherance of performing the obligations of a Trustee under a trust of this type;

(x)     to remove all or any part of the assets or of the situs of administration of the Trust from one jurisdiction to another jurisdiction in the United States at any time or from time to time;

(xi)    to utilize the General Reserve Amount to pay Trust Expenses that are not the obligations of NEWCO under the terms of this Agreement and Plan, or which NEWCO fails to pay pursuant to the provisions hereof and to restore such sums when appropriate;

(xii)   in connection with any property held hereunder which is distributable or payable to a minor, to transfer and pay over all or any portion thereof to such minor, or to a guardian of the property of such minor whenever appointed without requiring ancillary guardianship, or to a parent of such minor or the person with whom such minor resides, or to any custodian under any Uniform Gift to Minors Act or Uniform Transfers to Minors Act with power to select any person or trust company (including any fiduciary hereunder) to be such custodian with power to extend such custodianship to age twenty-one (21) years, without any obligation to see to the use or application thereof or to make inquiry with respect to any other property available for the use of such minor, the receipt by such minor, guardian, parent, person or custodian to be a complete discharge as to such transfer or payment; and

(xiii)  to pay the reasonable fees and expenses of the Legal Representative and his professionals.

-18-

## ARTICLE VI

### GENERAL OBLIGATIONS

6.1     *General Reserve Amount and Trust Expenses.* On the Effective Date, the Debtor shall deliver to the Trustee $28,500,000, which shall initially constitute the General Reserve Amount, and $1,500,000 as the initial Trust Expense Amount. All sums necessary to pay Small Claims, Compromised Product Liability Claims, and Allowed Administrative Tort Claims, if any, shall be paid out of the aforementioned $28,500,000.

6.2     *Trust Stock.* On the Effective Date, the Debtor shall endorse and deliver to the Trustee stock certificate(s) representing 250,000 shares of Trust Stock, registered in the name of the Trust.

6.3     *Notes and Related Documents.* On the Effective Date, the Debtor shall endorse, execute and deliver to the Trustee the Junior Secured Note Documents, including the Junior Secured Note, Future Claims Note, and LAE Note.

6.4     *Trust Expenses.* The Trustee shall deposit all payments made by NEWCO under the LAE Note into the Trust Expense Escrow Account for the payment of Loss Adjustment Expenses and Trust Expenses. The LAE Note shall be subject to mandatory prepayments of up to five (5) $100,000 installments (for an aggregate of $500,000 in mandatory prepayments), which shall be applied to reduce the last maturing installment under the LAE Note, and which the Trustee may require from NEWCO no more frequently than once every two calendar quarters beginning after the one-year anniversary of the Effective Date. However, such mandatory prepayments shall only be required if the Trust's accrued Loss Adjustment Expenses and Trust Expenses exceed the balance in the Trust Expense Escrow Account maintained under the Plan.

If the Loss Adjustment Expenses and Trust Expenses actually incurred by the Trust (other than in respect of Future Claims) is less to any extent (the "Overage") than the sum of (a) $1.5 million, plus (b) the aggregate amount payable and paid under the LAE Note, then the Trust shall remit one-half of the Overage to NEWCO, subject, however, to full payment of the LAE Note by NEWCO to the Trust.

If, as of any date prior to the Recomputation Date, the aggregate Loss Adjustment Expenses and Trust Expenses actually incurred by the Trust, in respect of all Asserted Liability Claims and Future Claims, exceeds to any extent (the "Shortfall") the sum of (i) $1.5 million, (ii) the aggregate amount payable and paid under the LAE Note, and (iii) the aggregate Future Claims LAE Amounts due, paid and collected as of such date, then NEWCO shall pay to the Trust an amount equal to one-half of the Shortfall (and such payment by NEWCO in respect of the Shortfall shall be made by continuing the same periodic amount of payment due in the quarter preceding maturity of the LAE Note until NEWCO's obligations in respect of the Shortfall are paid in full); provided, however, that NEWCO shall not be obligated to pay more than $3 million under this sentence and any excess Shortfall shall be paid by the Trust, and provided, further, that this provision shall not affect the provision of the Agreement regarding increasing the Future Claims Note on the Recomputation Date. Notwithstanding any other provision of this Agreement, except as provided in paragraph 4.5 hereof, amounts in the Trust Expense Escrow Account shall not be used to make Distributions to holders of Allowed Liability Claims, Resolved Future Claims or Interests.

6.5     *Additional Loss Adjustment and Trust Expenses.*

(a)     On the Recomputation Date, NEWCO and the Trustee will attach the recomputed amortization schedule for the Future Claims Note to the Future Claims Note to reflect the results of the amendment to the Future Claims Note contemplated by Section 4.3 hereof. This schedule will separately list the post-recomputation Future Claims LAE Amounts. The Trustee will deposit the Future Claims LAE Amounts upon receipt of each payment under the Future Claims Note into the Trust Expense Escrow Account, and use the same to pay Trust Expenses and Loss Adjustment Expenses.

(b)     If, after the Recomputation Date, the funds in the Trust Expense Escrow Account are not adequate to pay post-recomputation Trust Expenses and Loss Adjustment Expenses, NEWCO will pay any shortfall promptly upon demand. These payments will be applied as prepayments of the Future Claims Note allocable to subsequently maturing Future Claims LAE Amounts. If payments and prepayments under the Future Claims Note on account of Future Claims LAE Amounts exceed in the aggregate the total amount of Future Claims LAE Amounts provided for in the Future Claims Note as amended on the Recomputation Date, then NEWCO shall continue to pay the excess Trust Expenses and Loss Adjustment Expenses until termination of the Trust. Notwithstanding any other provision of this Agreement, the aggregate amount of NEWCO's payments

-19-

to the Trust (i) pursuant to the Future Claims Note and (ii) pursuant to this paragraph 6.5(b) shall not exceed $3,500,000 in any consecutive 12 month period after the Recomputation Date.

    (c)    Notwithstanding anything herein to the contrary, Federal income taxes relating to the Trust Assets and those Federal income tax liabilities of the Debtor which are not Assumed Liabilities pursuant to the Plan shall be assumed by the Trust, and paid from the Trust Assets, including amounts on deposit in the Trust Expense Escrow Account.

ARTICLE VII

THE TRUSTEE

    7.1    *Resignation.* The Trustee may resign as such by an instrument in writing signed by the Trustee and filed with the Court with notice to all Persons Entitled to Notice, provided that the Trustee shall continue to serve as Trustee after his resignation until the time when appointment of a successor Trustee shall become effective in accordance with Section 7.3 hereof.

    7.2    *Removal.* The Court may remove the Trustee at any time, for "cause," after notice to the Persons Entitled to Notice and After Notice and a Hearing, provided that the Trustee shall continue to serve as Trustee after his removal until the earliest of (i) the time when appointment of a successor Trustee shall become effective in accordance with Section 7.3; or (ii) upon such earlier date as the Court shall otherwise order. Cause shall be limited to fraud, embezzlement, conviction of a felony, breach of fiduciary duty, gross negligence in performance of duties as Trustee (provided that this provision shall not be construed to impair or affect the Trustee's rights to indemnification and exculpation against losses and claims arising from gross negligence as provided hereinbelow), willful misconduct, or physical or mental disability which prevents the Trustee from properly discharging his duties as Trustee for a period of time which materially and adversely affects the Trust and its operations.

    7.3    *Appointment of Successor Trustee.* In the event of the death, resignation, disability or removal of the Trustee, the Creditor Board shall have the authority, After Notice and a Hearing, to appoint a successor Trustee. Notice of such hearing shall be given to all Trust Beneficiaries. Such appointment may specify the date on which such appointment shall be effective. Every successor Trustee appointed hereunder shall execute, acknowledge and deliver to the Court and NEWCO and to the retiring Trustee an instrument accepting such appointment, and thereupon such successor Trustee, without any further act, deed or conveyance, shall become vested with all the rights, powers, trusts and duties of the retiring Trustee.

    7.4    *Trust Continuance.* The death, resignation, disability, or removal of the Trustee shall not operate to terminate the Trust or to revoke any existing agency created pursuant to the terms of this Agreement or invalidate any action theretofore taken by the Trustee. In the event of the resignation or removal of the Trustee, such Trustee shall promptly: (i) execute and deliver such documents, instruments and other writings as may be reasonably requested by the successor Trustee, or as ordered by the Court, to effect the termination of the Trustee's capacity as such under this Agreement and the conveyance of the Trust Assets then held by the Trustee to his successor; (ii) deliver to the successor Trustee all documents, instruments, records and other writings related to the Trust as may be in the possession of the Trustee; and (iii) otherwise assist and cooperate in effecting the assumption of its obligations and functions by such successor Trustee.

    7.5    *Compensation.* The Trustee shall receive as compensation for services to be rendered from the Effective Date and continuing through to the eleven year anniversary of the Effective Date as follows: (1) $50,000 quarterly commencing in the first quarter immediately following the Effective Date and continuing quarterly up to the seven year anniversary of the Effective Date; (2) $25,000 quarterly commencing in the first quarter immediately following the seven year anniversary of the Effective Date and continuing quarterly up to the eleven year anniversary of the Effective Date; plus (3) such additional compensation at such times and in such amounts as are approved by the Creditor Board or the Court After Notice and a Hearing; provided, however, that such additional compensation shall be limited to the difference between the sum of the compensation provided under subsections (1) and (2) above and the sum equal to 2% of the aggregate of all distributions made by the Trustee out of the Trust.

After the eleven year anniversary of the Effective Date, the Trustee shall receive as compensation for services to be rendered a quarterly amount which shall be agreed to between the Creditor Board and the Trustee. In the event the Creditor Board and the Trustee are unable to reach an agreement, the Trustee's compensation for the period following the eleven year anniversary of the Effective Date until the Trust's termination under Article X hereunder shall be determined by the Court After Notice and a Hearing. In addition, the Trustee shall be entitled to reimbursement of expenses from the Trust on the terms and conditions set forth in this Agreement.

In the event the Trustee shall resign, be removed for cause, die or otherwise no longer serve, further compensation payable to him (or to his estate) shall be determined by the Court After Notice and a Hearing. If the Trustee is an attorney associated with a law firm, such law firm shall not bill the Trust for the time of the Trustee or for its general or overhead expenses. Any successor Trustee shall receive compensation from the Trust Assets for its services as Trustee as shall be determined by the Court After Notice and a Hearing and will also be entitled to reimbursement from the Trust Assets for expenses reasonably incurred in performing its duties as Trustee.

7.6     *Standard of Care; Exculpation.* The Trustee shall not be personally liable to the Trust or to the holder of any Claim, Future Claim or Interest except for such of his own acts as shall constitute bad faith, willful misconduct, or willful disregard of his duties. Except as aforesaid, the Trustee shall be entitled to be exonerated and indemnified from time to time from the Trust Assets against any and all losses, claims, costs, expenses and liabilities arising out of or in connection with the Trust Assets or the affairs of the Trust, including, but not limited to, liability for taxes and expenses incurred due to the defense of any such claim. The foregoing provisions of this Section 7.6 shall also extend to the employees, representatives and agents of the Trustee, as the case may be. The Trustee shall not be obligated to give any bond or surety or other security for the performance of any of his duties.

7.7     *Reliance by the Trustee.* The Trustee may conclusively rely, and shall be fully protected personally in acting upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document which he has no reason to believe to be other than genuine and to have been signed or presented by the proper party or parties, or, in the case of cables, telecopies and telexes, to have been sent by the proper party or parties, in each case without obligation to satisfy himself that the same was given in good faith and without responsibility for errors in delivery, transmission or receipt. In the absence of bad faith, willful misconduct, or willful disregard of his duties, the Trustee may conclusively rely as to the truth of statements and correctness of the facts and opinions expressed therein and shall be fully protected personally in acting thereon. The Trustee may consult with legal counsel and shall be fully protected in respect of any action taken or suffered in accordance with the opinion of legal counsel. The Trustee shall have the right (but not the duty) at any time to seek instructions from the Court concerning the acquisition, management or disposition of the Trust Assets.

## ARTICLE VIII

## THE CREDITOR BOARD

8.1     *Members of the Creditor Board.* The initial three members of the Creditor Board (or entities entitled to designate such members) are identified on Exhibit 1 hereto. The Trustee shall, with the approval of a majority of members of the Creditor Board, within one year of the Effective Date or as soon thereafter as is practicable, select two representatives of holders of Allowed Liability Claims to serve on the Creditor Board. Thereafter, the Trustee shall, with the approval of a majority of members of the Creditor Board, within one year of the date that there are Resolved Future Claims or as soon thereafter as practicable, select two holders of Resolved Future Claims to serve on the Creditor Board. After the Third Distribution Date, only holders of Resolved Future Claims shall serve on the Creditor Board. Each member of the Creditor Board must hold an Allowed Claim or Resolved Future Claim, as the case may be, of at least $250,000.

8.2     *Meetings.* The Creditor Board shall meet at least annually on a date and place to be determined by the Trustee upon ten days' written notice. Special meetings of the Creditor Board can take place upon five days' written notice at the discretion of the Trustee. Members of the Creditor Board can participate at all meetings through telephone conferences and may waive notice requirements.

8.3     *Receipt of Reports.* The Creditor Board shall receive copies of all reports prepared pursuant to Section 4.7 hereof and quarterly and annual financial statements of NEWCO. The annual financial statements shall be audited and reported on by NEWCO's independent public accountants. All such financial information shall be kept confidential by the Creditor Board, unless previously disclosed to the public, and shall be used only in furtherance of Trust activities and the enforcement of NEWCO's obligations.

8.4     *Required Authorizations.* In addition to the other authorizations or approvals required of or from the Creditor Board, including, without limitation, approval of the Trustee's compensation, and with the exception of the obligations of the Trust set forth in the Shareholders' Agreement, the Trustee shall be required to obtain the consent of a majority of the members of the Creditor Board in order for the Trust, subject to the Shareholders' Agreement, to sell, assign, transfer, hypothecate or

-21-

otherwise dispose of: (i) twenty percent (20%) or more of the Trust Stock which the Trust holds at any time during the term hereof to a third party or persons acting in concert; (ii) a number of shares which, when aggregated with the shares of the Trust held (to the knowledge of the Trustee) by the same party or parties acting in concert, would constitute 20% or more of the issued and outstanding Trust Stock; or (iii) any of its Trust Stock in connection with an initial or secondary public offering conducted by NEWCO.

8.5     *Discretionary Authority.* Subject to the terms of this Agreement, the Trustee may, but is not required to, obtain the consent of a majority of the members of the Creditor Board for, among other things, any transaction that may have a material effect on the Distributions hereunder at any time during the term hereof. The failure of the Trustee to seek any authorization under this Section 8.5 shall not be deemed a basis for removal nor shall such decision result in any liability to the Trustee whatsoever.

8.6     *Removal.* A member of the Creditor Board shall be removed in the event that such member fails to attend (or participate telephonically in) two or more meetings of the Creditor Board in any calendar year, unless the Trustee and a majority of the other members of the Creditor Board elect otherwise as a result of extenuating circumstances. In addition, a member shall be removed at such time as it receives its final distribution from this Trust.

8.7     *Vacancies.* The Trustee shall, with the approval of the majority of the remaining members of the Creditor Board, fill any vacancy on the Creditor Board, including vacancies arising from the death, resignation, removal or disability of any member. Notwithstanding the aforementioned, all members of the Creditor Board shall be either former members of the Creditors Committee, or such member's nominee, or holders of Allowed Liability Claims or holders of Resolved Future Claims, but cannot be employees of NEWCO.

8.8     *Compensation.* Each Creditor Board Member shall receive $1,000 per meeting attended (physically or by conference call), in addition to reimbursement of expenses incurred in connection with the performance of their duties upon submission of appropriate invoices to the Trustee. Such compensation and expenses shall be included in the Trust Expenses.

8.9     *Indemnification.* The provisions of Section 7.6 and 7.7 shall apply to the members of the Creditor Board to the same extent as those provisions apply to the Trustee.

8.10     *Duration.* The Creditor Board shall continue in existence until the termination of the Trust or until disbanded by the Court After Notice and a Hearing.

## ARTICLE IX

### RETENTION OF JURISDICTION

The Court shall have jurisdiction over those matters reserved to the Court under this Agreement and the Plan, including, without limitation, the determination of all controversies and disputes arising under or in connection with this Agreement.

## ARTICLE X

### TERMINATION

The Trust shall terminate upon approval by the Court After Notice and a Hearing as soon as practicable after the later of (A) the resolution of all Asserted Liability Claims and Future Claims asserted against the Trust within 20 years from the Effective Date; or (B) final payment of principal and interest on the Junior Secured Note, Future Claims Note and LAE Note, or a determination that any unpaid portion of the Junior Secured Note, Future Claims Note or LAE Note cannot be satisfied, which determination shall be made in the sole and absolute discretion of the Trustee; unless further extended by Court order or, unless satisfied at that time, until payment of or provision for payment of all Trust Expenses, and all taxes attributable to the Trust and Trust Assets, is made, provided however that this Trust shall terminate prior to January 1, 2050. Prior to termination, the Trustee shall distribute all Trust Assets in accordance with the terms of the Plan and this Agreement. The Trustee shall provide NEWCO prior written notice of the termination of the Trust which shall specify the effective date of termination.

-22-

## ARTICLE XI

### MISCELLANEOUS

11.1    *Notices.*

(a)    All notices, requests or other communications required or permitted to be made in accordance with this Agreement shall be in writing and shall be delivered personally or by telex or other telegraphic means or mailed by first class mail:

(i)    if to the Trustee, at:

(1)    Howard J. Berlin, Esq.
Kluger, Peretz, Kaplan & Berlin, P.A.
1970 Miami Center
201 South Biscayne Boulevard
Miami, Florida 33131

and (other than Notices under Sections 4.10 hereunder) copy to:

(2)    Leonard H. Bloom, Esq.
Nortman & Bloom, P.A.
1101 Brickell Avenue, Suite 1400
Miami, Florida 33131

(ii)    if to the Persons Entitled to Notice, then to such entities at their respective addresses on file with the Court; and

(iii)    if to NEWCO, at:

(1)    The New Piper Aircraft, Inc.
2926 Piper Drive
Vero Beach, Florida 32960
(Attn: Executive Offices)

and copy to:

(2)    Lori L. Lasher, Esq.
Reed, Smith, Shaw & McClay
2500 One Liberty Place
1650 Market Street
Philadelphia, Pennsylvania 19103

(3)    John S. Bagby, Jr., Esq.
Bagby & Associates
1600 Market Street
Suite 1920
Philadelphia, Pennsylvania 19103

(iv)    if to Old Piper, at its registered agent.

(b)    Any entity may change the address at which it is to receive notices under this Agreement by furnishing written notice in accordance with the provisions of this Section 11.1(b) to the entity to be charged with knowledge of such change.

11.2    *Effectiveness.* This Agreement shall become effective on the Effective Date; provided, however, that the Trustee and any persons employed or engaged by him in connection herewith shall be entitled to compensation and reimbursement for services rendered and costs incurred from the Confirmation Date, whether or not this Agreement otherwise becomes effective.

11.3    *Trust Prevails.* In the event of any inconsistency between the terms of this Agreement and the Plan, or if the Plan is silent on a matter or issue treated in this Agreement, the terms of this Agreement shall prevail and govern.

11.4    *Counterparts.* This Agreement may be executed in one or more counterparts, all of which shall be taken together to constitute one and the same instrument.

11.5    *Governing Law.* This Agreement shall be governed by, construed under and interpreted in accordance with the laws of the State of Florida, exclusive of its conflicts of law principles.

11.6    *Headings.* Sections, subheadings and other headings used in this Agreement are for convenience only and shall not affect the construction of this Agreement.

11.7    *Severability.* Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall not invalidate the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable any such provision in any other jurisdiction.

11.8    *Amendments.* This Agreement may be amended from time to time by the Trustee with the approval of the Court After Notice and a Hearing; provided, however, no Court approval shall be required if the amendment is approved by a majority of the members of the Creditor Board and, until such time as a majority of the membership of the Creditor Board is made up of holders of Resolved Future Claims, the Legal Representative. The Trustee shall file with the Court any amendment to this Agreement and shall also provide copies thereof to any Trust Beneficiary who requests same in writing.

11.9    *Non-Transferability of Asserted and Allowed Liability Claims and Future Claims.* All holders of Asserted and Allowed Liability Claims and Future Claims are prohibited from transferring, assigning, selling, pledging, or otherwise disposing of such claims or their interests in this Trust and the Trust Assets to any third party, and the Trustee shall make (and be fully protected in making) all Distributions directly and solely to the original holder of each Allowed Claim, Interest or Resolved Future Claim, regardless of any notice received or action taken to the contrary. Any such putative transfer or assignment, including, but not limited to, an attempted pledge or encumbrance shall be void ab initio and of no consequence, except for transfers or assignments which occur by operation of law.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement or caused this Agreement to be duly executed by their respective officers thereunto duly authorized as of the day and year first above written.

PIPER AIRCRAFT CORPORATION

By: _____
Charles M. Suma,
*President and Chief Operating Officer*

PIPER AIRCRAFT CORPORATION IRREVOCABLE TRUST

By: _____
Howard J. Berlin, *Trustee*

THE NEW PIPER AIRCRAFT, INC.

By: _____

10131061                                          -24-